JOHN R. GILMARTIN, AS COLLECTOR OF TAXES FOR THE

CITY OF PORTLAND, 1930

*vs.*

CONSTANCE EMERY.

Cumberland.    Opinion June 4, 1932.

*Harry C. Wilbur*, for plaintiff.
*Verrill, Hale, Booth & Ives*, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

BARNES, J.    The case comes up on report, in an action of debt for the taxes on personal property.

By stipulation of counsel the sole issue is whether defendant's domicil on April first, 1930, was in Portland; and, if this be decided in the affirmative, judgment shall be for plaintiff in the sum of $6,461.76, with interest from the date of the writ; otherwise judgment to be for defendant.

Defendant was born in Portland and her domicil was without interruption the same as her father's, in Portland, until his death, in April, 1929.

For more than twenty years before his death, defendant's father, with his family, lived during the winter seasons in Portland, and for the summer months in a house in the town of Cumberland.

In May, following the death of her father, defendant opened the Cumberland house, and lived in it through the summer.

In September of that year she and her sister, the surviving heirs of the father, sold the Portland residence, dividing the furniture therein, and defendant bought the sister's interest in the Cumberland property. She then moved to the Cumberland house a few pieces of her share of the furniture formerly in the Portland house. The remainder, "the bulk of it," she placed in storage.

She lived in the Cumberland house through the summer of 1929, and on October first departed for travel in Europe, returning to her Cumberland house on June 7 or 8, 1930.

She testified that at the time of sale of the Portland house she had an intention as to her future, permanent residence, namely, "to establish my residence at Cumberland Foreside."

To promote her business and property interests she retained in her employ while absent, a caretaker in Cumberland, a chauffeur, and an attorney at law.

From September, 1920, she had been a registered voter in Portland, and it was on July 28, 1930, that she caused her name to be stricken from such registration list.

For the maintenance of government, town, county and state, municipal officers annually assess taxes.

As to personal property generally, the law is that it shall be assessed to the owner in the town where he is an inhabitant on the first day of each April. R. S., Chap. 13, Sec. 14.

The relation of inhabitant is mainly a political relation.

To render a person liable to assessment for taxes on personal property, it is essential to demonstrate that he is an inhabitant of a definite town. And it is our understanding that the word "domicil," as used in the stipulation herewith, expresses the combination of circumstances that establish a person as an inhabitant of a town for purposes of taxation on his personal property generally. We use the word here with that meaning, and the question before us is whether defendant's domicil, before April first, 1930, had been changed from Portland to Cumberland.

Decisions of this court on descent and distribution of estates turn upon the same conclusion, as do questions of pauper settlement, and of taxation.

All are matters regulated under statute law. Cases arising under the statutes generally applicable to either are analogous, and decisions in one case may be cited as governing in others of the classes named.

A person may have at one time several residences, meaning houses equipped for use as his dwellings; but for the purpose of fixing his status as subject to municipal taxation he shall be deemed to have but one domicil at a time.

This invariably has been held to be the law in this state where litigation has arisen in cases of the classes mentioned above.

It is also settled that the burden of proving change of domicil is upon the one who asserts such change, and the presumption of continuance of domicil is enough, until disproved. *Holyoke* v. *Holyoke*, 110 Me., 469.

Defendant admits that her domicil and established residence for purposes of municipal taxation in the spring of 1929 was in Portland.

To avoid payment of the taxes assessed upon certain of her personal property, the sum declared upon in this writ, it is incumbent upon her to prove that, prior to April first, 1930, she abandoned

her domicil and established such in Cumberland, with the intention of remaining there for an indefinite time.

"In order to establish a domicil of choice evidence of three important facts must appear, (1) abandonment of domicil of origin, (2) selection of a new locus, (3) the animus manendi." *Mather* v. *Cunningham*, 105 Me., 326.

Did defendant here change her domicil before April first, 1930?

And if she changed it, did she do so with the intention of making Cumberland the site of her domicil for an indefinite time?

We must find from the record before us, by direct proof, so far as proof may be found, and from inferences logically drawn, affirmative answers to both questions, or otherwise the tax was legally assessed and must be paid.

The act of change from a home is easily demonstrable.

To determine the intent of the actor is sometimes more difficult.

The purpose with which one changes his residence may be expressed in testimony by the party alleging change of residence. *Parsons* v. *Bangor*, 61 Me., 457. *Knox* v. *Montville*, 98 Me., 493.

So too, oral declarations made by the party whose domicil is in dispute, as to the intent with which removal was accomplished, when part of the *res gestae*, are admissible in evidence in a contest to which he is a party. *Gorham* v. *Canton*, 5 Me., 266; *Wayne* v. *Greene*, 21 Me., 357; *Corinth* v. *Lincoln*, 34 Me., 310; *Etna* v. *Brewer*, 78 Me., 377; *Knox* v. *Montville*, supra.

"Residence, being a visible fact, is not usually in doubt. The intention to remain is not so easily proved. Both must concur in order to establish a domicil.

"And, as both are known to be requisite in order to subject one to taxation, or to give him the right of suffrage, any resident who submits to the one, or claims the other, may be presumed to have such intention." *Gilman* v. *Gilman*, 52 Me., 165-177.

If, when opening her Cumberland residence in 1929, the defendant had formed a firm intent to change her domicil to that town, there was the concurrence of residence and intent necessary to effect change of domicil.

Without reciting the testimony, we find defendant testified that after her father's death she decided she found her greatest interest in the Cumberland home, the garden there was her chief hobby;

that recollections of family life associated with that home were the more pleasant; that she could not afford to maintain two homes, as her father had since 1900; that she knew "the rates" would be less in Cumberland; that she preferred to be identified with that town; that she wished to be free to travel, especially in winters.

These expressions are admissible because they have a tendency to show her intention to establish her domicil in Cumberland when she sold her Portland home, though not necessarily controlling.

And, so far as they throw light on whether or not she had a firm intention to change, they are admissible if expressing her decision at the time she took the step to sell.

But plaintiff contends that other evidence shows conclusively that until after the tax was assessed there was no abiding determination to change domicil accompanied by any act indicative thereof. He argues that, at the very time of selling the family home in Portland, defendant purchased a lot on Chadwick Street, in the same city, which she admits.

And she testified she bought with the purpose, at some time to build a home on Chadwick Street, but that it was to be a "secondary home."

Plaintiff further urges that the storing of the furniture of the Portland home, and the fact that defendant did not take it to the Cumberland house; that she took her passport for foreign travel, in the summer, from Portland; that she registered as from Portland in hotels, during the foreign trip; that her agent, an attorney at law, registered her motor as that of a Portland resident, in 1930; that no list of property subject to taxation in Cumberland was submitted to the assessors of Cumberland in 1930; that in the June primaries of that year defendant voted in Portland; that she did not notify the Portland board of registration of voters that she had moved to Cumberland until July, 1930; that these facts prove defendant had not changed her residence prior to April, 1930.

Several of the acts cited by plaintiff as proof of no change of domicil up to the time of their doing, are of the sort that do not separately prove the point, as, for illustration, the voting in the primary. Such voting was legal and proper, and would tend to prove change in domicil, if it were shown that defendant knew of the statute giving her the right.

Plaintiff argues that if she had consulted her attorney, or any person who knew the law governing registration and enrolment, on the question of her right to vote in Portland in the primary election, and as to the effect of her voting in either town on the probability that her intent, in the preceding summer was to change her domicil and become an inhabitant of Cumberland, she would undoubtedly have been informed that under the law she could register, enroll and vote in Cumberland, if her intent the summer before was a firm intent to change her residence, but that, if her change of domicil had not been established in Cumberland for three months, next preceding that election she could vote legally only in Portland. Such would have been sound advice, and the argument is persuasive.

Defendant is presumed to know the law, and her act in voting in Portland, if done with full knowledge, to the charitably minded tends to show either lack of firm intent to change her domicil in 1929, or ignorance of the law.

Plaintiff further contends that the natural conclusion on all the evidence must be that the determination to change her domicil had not become fixed in defendant's mind until after the tax was assessed.

A fact of considerable significance is that on March 29, 1930, the third day before the taxes for the current year would be assessed, defendant cabled her agent from Italy.

She was then traveling with Mrs. Margaret S. Fogg, of Scarborough, Maine.

As a witness Mrs. Fogg said the cablegram was sent from a hotel where she and defendant were guests, and that defendant came to her, after sending the message, and said, "I have sent a cable to Robert to change my residence to Cumberland."

This statement, made at the time of sending the cable, or immediately after that act, is admissible as evidence, and it renders admissible the cable as well as a prior statement of the witness that a great many times during the winter then ending the defendant had said she "had been considering moving out of the city of Portland into Cumberland."

The cablegram, which bore date of March 29, 1930, was addressed to her counsel in Portland and contained these words, "Please arrange establish residence in Cumberland." What is this

cable's evident meaning? It may be arrange and establish my residence in Cumberland; or it may be arrange to establish my residence in Cumberland. Whatever its meaning, it looks to the future; demands action.

From the record we can find no act done in furtherance of the plan of the sender.

And from all the admissible evidence we conclude that defendant has not sustained the burden of proving change of domicil prior to April first, 1930.

In accordance with the stipulation, the judgment will therefore be for plaintiff in the sum of $6,461.76 with interest from the date of the writ.

*So ordered.*