Cecilia MARGANI

v.

Daniel Jeffrey SANDERS.

Supreme Judicial Court of Maine.

Argued Nov. 1, 1982.
Decided Dec. 8, 1982.

Ronald J. Cullenberg (orally), Farmington, for plaintiff.

Kettle, Carter, Hannigan & Vickerson, Donald L. Carter, Edward W. Klein (orally), Dennis Levandoski, Portland, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER and VIOLETTE, JJ.

NICHOLS, Justice.

This appeal raises several jurisdictional questions regarding a paternity and support action brought under the Uniform Act on Paternity, 19 M.R.S.A. § 271 *et seq.* Finding no error, we affirm the judgment of the Superior Court.

Cecilia Margani, the Plaintiff and a resident of Pennsylvania, gave birth to a son, Justin, on August 28, 1978, in Pennsylvania. On November 8, 1979, she brought this paternity and support action in District Court, Franklin County, naming Daniel Jeffrey Sanders as the father. Sanders, a welder who then was working in Scotland, removed the action to Superior Court. A Franklin County jury found that Sanders was Justin's father. On December 30, 1981, the Superior Court entered judgment for the Plaintiff. This timely appeal followed.

The issues on appeal derive from an order entered by the District Court prior to removal. Sanders moved to dismiss for lack of personal jurisdiction and venue, and for insufficiency of process and service of proc-

ess. Following an unrecorded hearing that motion was denied by the District Court in an order entered on May 8, 1980. On appeal Sanders raises issues concerning: (1) personal jurisdiction; (2) forum non conveniens; (3) venue; and (4) service of process.[1]

Sanders argues first that the nature and quality of his "contacts" with the State of Maine were insufficient to permit the District Court to exercise personal jurisdiction over him under the Maine "long arm" statute, 14 M.R.S.A. § 704–A (1980). We need not reach this issue.

Although the District Court's order denying the motion to dismiss was not specific as to the precise reason behind that Court's conclusion that personal jurisdiction was proper, implicit in that order was a finding that Sanders was a domiciliary of the State of Maine. The order, which addressed the other raised issues in a thorough fashion, did not purport to evaluate the sufficiency of Sanders' contacts with the State; rather, the order referred to certain evidence which "further supports plaintiff's contention [that] defendant is a Maine resident who works out of state at a variety of job locations; living in a variety of communities handy to his work." This language, coupled with the absence of any minimum contacts analysis, indicates to us that the District Court predicated personal jurisdiction on a finding that Sanders was a domiciliary of this State.

A state properly may assert personal jurisdiction over a person domiciled in that state; in fact, domicile alone is a sufficient base for asserting jurisdiction even in a case, as the present one, where a defendant is absent from the jurisdiction and substituted service is employed. *Milliken v. Meyer,* 311 U.S. 457, 462, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940).[2] The remaining question, thus, is whether the District Court erred in concluding that Sanders was domiciled in Maine.

Domicile is a somewhat elusive concept which often is confused with the related yet separate concept of "residence." A principal distinction between the two is captured in the frequent observation that a person can have more than one residence but only one domicile. *See, e.g., Rodgers v. Commonwealth Unemployment Compensation Board of Review,* 40 Pa.Cmwlth. 552, 397 A.2d 1286, 1287 (1979). Domicile has two components: residence and the intent to remain. When these concur there is domicile. *Belanger v. Belanger,* 240 A.2d 743, 746 (Me.1968); *Gilmartin v. Emery,* 131 Me. 236, 239, 160 A. 874, 875 (1932).

Certain presumptions obtain when a court makes a determination of domicile. One of these is the presumption that absent proof of change, domicile continues, the burden of proof resting with a person asserting a change. *Gilmartin v. Emery,* 131 Me. at 238, 160 A. at 875; *see generally Restatement (Second) of Conflicts* § 19 (1971); R. Leflar, *American Conflicts Law* § 15 (3d ed. 1977). This presumption of continued domicile survives even if a person is absent from his home. *Mitchell v. United States,* 88 U.S. (21 Wall.) 350, 353, 22 L.Ed. 584 (1875) ("Mere absence from a fixed home, however long continued, cannot work the change.") This absence can even reach the level of abandonment. *Inhabitants of Exeter v. Inhabitants of Brighton,* 15 Me. 58, 60–61 (1838) ("a home may be relinquished and abandoned, while the domicil of the party, upon which many civil rights and duties depend, may in legal contemplation remain.")

Corollary propositions include the presumption which favors a person's original domicile as his legal domicile when there is conflicting evidence as to intent. *Moss v. National Life and Accident Insurance Co.,* 385 F.Supp. 1291, 1298 (W.D.Mo. 1974). Furthermore, a person does not

---

1. At no point did Sanders challenge the applicability of the Uniform Act on Paternity.

2. For a provocative discussion, however, of the appropriateness of employing technical domicile as a jurisdictional base see Weintraub, *An Inquiry into the Utility of "Domicile" as a Concept in Conflicts Analysis,* 63 Mich.L.Rev. 961, 979–86 (1965).

change his domicile "by simply moving from place to place." *Eisel v. Secretary of the Army,* 477 F.2d 1251, 1265 (D.C.Cir. 1973).

■ Although a determination of domicile is a mixed question of fact and law, the correct standard for appellate review of such a determination is the clearly erroneous test of M.R.Civ.P. 52(a). *See Hawes v. Club Ecuestre El Comandante,* 598 F.2d 698, 702 (1st Cir.1979) (applying clearly erroneous standard of Fed.R.Civ.P. 52(a) to an identical issue); *see generally Fitzgerald v. Baxter State Park Authority,* Me., 385 A.2d 189, 201 (1978). In applying this standard, we are mindful that a finding must stand if supported by *any* competent evidence in the record. Moreover, a finding supported by competent evidence cannot be overturned merely because of the presence in the record of evidence which would support an alternative finding. *Harmon v. Emerson,* 425 A.2d 978, 981–82 (Me.1981).

■ Turning to the case at bar, we must decide whether a finding of domicile is supported by any competent evidence. We conclude that it is.

The record reflects that Sanders attended high school in Rangeley, Maine; he owned a dwelling house at Oquossoc, which is another village in the Town of Rangeley; he had a Maine driver's license; and he maintained a Post Office box at Oquossoc. At the time he was served, moreover, Sanders had two motor vehicles currently registered in Maine. The registrations revealed that both vehicles had been re-registered in

Maine; they also showed the payment of excise taxes in Maine. On each registration Sanders listed Rangeley, Maine, as his "legal residence." [3] Sanders also admitted that during the summer of 1978 he lived in Rangeley and that he maintained a checking account there. Last, when asked by his attorney on direct examination at trial, "Where are you from?", Sanders replied, "Oquossoc, Maine." Later asked if he had lived in the Oquossoc area since 1968, Sanders responded, "Yes, off and on, yes."

Taken together, this evidence could support a finding of domicile. We cannot say that *no* evidence in the record supports that finding. Thus, under the clearly erroneous standard the finding of domicile must be upheld. *Harmon v. Emerson,* 425 A.2d at 982. Because Sanders was a domiciliary of the State of Maine, the District Court properly exercised personal jurisdiction over him.[4]

■ Sanders argues next that the District Court should have declined to exercise personal jurisdiction over him under the doctrine of forum non conveniens. We note first that there is no indication in the record that this issue was either raised, discussed or ruled upon below. Not having been saved, the point is waived. M.R.Civ.P. 12(h)(1).

■ Dismissal for forum non conveniens, furthermore, is discretionary in the trial court. Dismissal on this basis is only proper when an alternative forum is available, *MacLeod v. MacLeod,* 383 A.2d 39, 42–

---

**3.** This fact is of particular significance in light of the frequent equation of the terms "legal residence" and "domicile." *See Restatement (Second) of Conflicts* § 11 comment k (1971); *see also Coke v. Coke,* 560 S.W.2d 631, 633 (Tenn.App.1977); *Phillips v. South Carolina Tax Commission,* 195 S.C. 472, 477, 12 S.E.2d 13, 16 (1940). While we need not decide whether Sanders' assertion that Maine is his state of legal residence estops him from arguing that he must be reached, if at all, under the Maine long arm statute, we do find this declaration considerable evidence of Sanders' intention to remain a domiciliary of this State. This evidence assumes added weight inasmuch as one of the registrations was renewed on Octo-

ber 25, 1979. The complaint in this action was filed fourteen days later, on November 8, 1979.

**4.** While we reach this conclusion through application of the clearly erroneous standard, it is evident that even under a less deferential standard of review Sanders would not succeed in his argument that exercise of jurisdiction was improper. As noted above, the burden of proof for showing change of domicile rests with the person asserting the change. While the record reflects that in recent years Sanders lived in Pennsylvania, New Hampshire, Connecticut and, most recently, Scotland, there is no evidence of Sanders' intent to make any of these places his domicile. Itinerancy itself does not indicate intent.

43 (Me.1981), and when dismissal "will further the ends of justice and promote convenience of the suit for all parties." *Id.* at 41. There is no evidence in the record on either point.

Additionally, Sanders contends that venue in this action was improper. The District Court determined that venue was proper, relying on section 284 of the Uniform Act on Paternity. That section states:

An action under this subchapter may be brought in the county or district where the alleged father is present or has property or in the county or district where the mother or child resides.

19 M.R.S.A. § 284 (1981). The court concluded that Sanders' ownership of the dwelling house at Oquossoc constituted sufficient possession of property under this section.

█ Sanders argues that because the house is located on leased land it is an improvement to the freehold and does not belong to him. In effect, he would deny ownership to defeat venue. We need not delve into the finer points of property law to decide this issue. Sanders paid consideration for this house, and he is the owner of record. This constitutes sufficient possession of "property" for the broad purposes of the Uniform Act on Paternity.

█ Finally, Sanders contests the sufficiency of service upon him by publication under M.R.Civ.P. 4(g). Sanders attacks the sufficiency of the affidavits supporting the motion for service by publication and the general appropriateness of service by publication in this instance.

The record reveals that two attempts were made to personally serve Sanders in Rangeley. Another attempt was made to serve him by certified mail in New Hampshire. All these efforts were unsuccessful. A "diligent search" statement by the deputy sheriff who attempted to personally serve Sanders is in the record. All of this, coupled with the affidavit of Plaintiff's counsel describing the lack of success in serving process on Sanders, constitutes "a showing that service cannot with due dili-

gence be made by another prescribed method ..." under M.R.Civ.P. 4(g). We consequently conclude that the District Court did not abuse its discretion in ordering service by publication.

Therefore, the entry is:

Appeal denied.

Judgment affirmed.

All concurring.