STATE OF MAINE                          BUSINESS AND CONSUMER COURT
CUMBERLAND, ss                          Location: Portland
                                        Docket No.: BCD-CV-11-33
                                        AMH - Cum - 11/8/2012

                                    )
PHENIX MUTUAL FIRE                  )
INSURANCE COMPANY,                  )
                                    )
                Plaintiff           )
                                    )
        v.                          )
                                    )
SALLY DORAY,                        )
                                    )
                Defendant           )

### ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the cross-motions for summary judgment filed by Plaintiff Phenix Mutual Fire Insurance Company (Phenix) and Defendant Sally Doray. Both motions focus on the issue whether Defendant's property at 175 Dickenson Road in Wiscasset, Maine was her "residence premises" for purposes of coverage under her homeowner's insurance policy with Phenix as of November 4, 2009, when a fire occurred at that property.

### FACTS

The following facts are undisputed except where noted. Sally Doray owns property at 175 Dickenson Road in Wiscasset, Maine (the Property), where a fire occurred on November 4, 2009. At the time of the fire, she was the named insured on Homeowners' Policy No. 1103208 (the Policy) issued by Phenix, which listed the Property as the insured "residence premises".

Before 2000, Ms. Doray worked at the Maine Yankee power plant in Wiscasset. During While working at Maine Yankee, she lived at the Property and commuted to work every day. When Maine Yankee closed in 2000, she took a job with Bartlett

1

Nuclear that called for her to travel to different locations to work. The longest of these assignments lasted nine months. After each assignment she would return to the Property.

In 2006, Ms. Doray took a job at the Vermont Yankee nuclear power plant in Vernon, Vermont, where she worked until March 5, 2011. When she began work at Vermont Yankee, she informed her new employer that her plan was to work for Vermont Yankee for five years from her date of hire. After her employment with Vermont Yankee was over, Ms. Doray intended to return to the Property and live there full-time.[1]

During Ms. Doray's employment at Vermont Yankee, she was required to live within 20-30 minutes of the Vermont Yankee facility. She met this requirement initially by renting a house in Brattleboro, Vermont, and later purchasing a trailer in Hinsdale, New Hampshire. When she was first employed at Vermont Yankee, Doray would return to the Property often, but as time went on, she returned less frequently. Still, she travelled back to the Property whenever she had the opportunity.[2] When she would go home to Maine, she would first go the Property and then travel to visit family and friends. In her absence the Property was never unoccupied or vacant, and in 2009, Doray spent approximately 50 nights there.

Doray asserts that she never considered any of the other properties she owned or co-owned her primary residence. She notes that some of her possessions—including possessions of sentimental value such as family photographs—remained throughout the

---

[1] Phenix does not dispute this fact, but points out that she was aware of Vermont Yankee's requirement that she live within 20-30 miles of the plant when she began employment there.

[2] Phenix does not dispute this fact, but it points out that Doray had few breaks from work in which she could return to the Property.

2

years at the Property, and that she always had clothing, jewelry and personal grooming items at the Property, along with her own bed and bureau.

Phenix contends that by moving to Vermont and New Hampshire to work, having mail sent to other addresses, and insuring a property at another address, Ms. Doray did not intend for the Property to remain her primary residence. Phenix also points out that she obtained a New Hampshire driver's license while she was working for Vermont Yankee.

The primary factual disputes between the parties center on how often Ms. Doray returned to the Property during her employment out of state, and how many nights she stayed there during the year preceding the fire. However, it is undisputed that she returned regularly to the Property; that she always kept clothing and many other possessions at the Property, and that she stayed at the Property about 50 nights during the year before the fire.

## DISCUSSION

### 1. The Framework for this Decision

It is significant that the parties have presented this issue to be resolved on cross-motions for summary judgment. From the outset, when the parties proposed this approach in a telephonic conversation, the court pointed out that, to be sure of the case being resolved on cross-motions, the parties would need to stipulate to all relevant facts. *See* Phila. Indem. Ins. Co. v. Farrington, 2012 ME 23, ¶4, 37 A.2d 305, 306 (case decided on cross-motions based on stipulation to the relevant facts). The parties assured the court that they anticipated filing an agreed-on statement of material facts. Later, the parties advised the court that they had been unable to do so, but still were seeking the issue to be resolved on cross-motions without a trial or evidentiary hearing.

3

The cross-motion briefing resulted in the parties' submittal of separate statements of material fact, with some areas of disagreement. At oral argument on the motion, the court noted the factual disagreements and again raised the question whether the case should be decided on cross-motions. Counsel for both parties reiterated their view that the coverage issue could and should be adjudicated on cross-motions, and that the court had before it all facts necessary for a decision.

A similar situation arose in *The Mearl Corp. v. State Tax Assessor*, 482 A.2d (Me. 1984). The Superior Court was presented with cross-motions but with competing statements of material facts. The court elected to deny both motions. The Law Court commented as follows:

> When parties seek to avoid the need for a trial, and to place the matter in controversy before the court for final resolution as a pure question of law, the proper procedure is a submission of the case upon an agreed statement of facts. *See Pelletier v. Dwyer*, 334 A.2d 867, 871-72 (Me. 1975); *Public Finance Corp. v. Scribner*, 159 Me. 150, 152, 189 A.2d 368, 368-69 (1963). As this Court stated in *Scribner:* The justice to whom a case is submitted upon an agreed statement cannot properly add or subtract from the facts thus agreed upon but must apply the applicable law to that which is presented to him. 59 Me. at 152, 189 A.2d at 369. This case, however, was not submitted upon an agreed statement, and the presiding justice was not bound "to apply the applicable law to that which [was] presented to him." *Id.* Instead, the presiding justice was free to determine that material issues of fact other than those stipulated to remained to be resolved, and to deny both cross motions for summary judgment. *See* M.R. Civ. P. 56(c). Accordingly, the parties did not submit the case for a final adjudication.

The court has considered whether to deny both cross-motions, as did the trial court in *Mearl*, based on the absence of an agreed-on statement of facts. However, based on the parties' submittals, the court agrees that the relatively few disputed facts are not material for purposes of summary judgment. Also, the court has "rounded down" in cases of conflicts between Ms. Doray's statement of material facts and her deposition testimony, on the theory that she cannot contradict her own sworn testimony in her statement of material facts. *See Blue Star Corp.*, 2009 ME 101, ¶¶ 31-34, 980 A.2d at

4

1278; *Schindler v. Nilsen*, 2001 ME 58, ¶ 9, 770 A.2d 638, 641-42; *Zip Lube, Inc. v. Coastal Sav. Bank*, 1998 ME 81, ¶ 10, 709 A.2d 733, 735. Thus, for example, regarding how many nights she spent at the Property during the year before the fire, the court has adopted her lower estimate during deposition testimony of 50 nights over the higher figure contained in her statement of material facts.

Pursuant to M.R. Civ. P. 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact set forth in those statements and that [the] party is entitled to a judgment as a matter of law." *See also Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶ 11, 989 A.2d 733. A party wishing to avoid summary judgment must present a prima facie case for each element of the claim or defense that is asserted against it. *See Reliance Nat'l Indem. v. Knowles Indus. Svcs.*, 2005 ME 29, ¶ 9, 868 A.2d 220.

### 2. The Meaning of the Terms "Residence Premises" and "Reside" in the Context of this Case

The meaning of an insurance contract is a question of law. *Jipson v. Liberty Mut. Fire Ins. Co.*, 2008 ME 57, ¶ 10, 942 A.2d 1213. Contractual language is ambiguous if it is reasonably subject to different interpretations. *Cambridge Mut. Fire Ins. Co. v. Vallee*, 687 A.2d 956, 957 (Me. 1996). Ambiguities in insurance contracts are construed in favor of the insured and in favor of coverage. *Jipson*, 2008 ME 57, ¶ 10, 942 A.2d 1213.

The Policy defines "residence premises" as "[w]here You [the insured] "reside" and as the premises identified as the "residence premises" in the declaration. It is undisputed that the Property is listed as the "residence premises" in the declaration. The parties, however, argue different definitions of "reside," a term that is not defined by the Policy.

5

In support of its position, Phenix relies on two Maine Superior Court cases, *Wheeler v. Hartford Mutual Insurance Company.*, 2003 WL 23112385 (Me. Super. Nov. 24, 2003), and *Ivanov v. Phenix Mutual Insurance Company*, 2007 WL 4693281 (Me. Super. May 15, 2007). However, both cases are distinguishable. In *Wheeler*, the parties did not dispute that the property covered by the policy containing the "residence premises" language was not in fact the insured's residence premises. 2003 WL 23112385, at * 1. In *Ivanov*, the contract language was different from the language in the Policy. 2007 WL 4693281, at * 3.

Phenix also cites a number of cases from other jurisdictions in support of its argument that the insured must actually occupy the covered property. Some of these cases including *Shepard v. Keystone Insurance Company*, 743 F. Supp. 429, 431 (D. Md. 1990) and *McGrath v. Allstate Insurance Company*, 802 N.W.2d 619, 622 (Mich. App. 2010) ("the term reside requires that the insured actually live at the property. . ."), clearly support its interpretation of "reside". The remaining cases, however, merely circle back to the definition stated in the Policy, that is, a "residence premises" is where the insured "resides." *E.g., Grange Mut. Cas. Co. v. Demoonie*, 290 S.E.2d 442, 451 (Ga. App. 1997).

Ms. Doray presents two arguments. First, she contends that because Maine law allows an individual to have multiple residences, she can "reside" at more than one location. In support of this argument, she relies on *Margini v. Sanders*, 453 A.2d 501, 503 (Me. 1982) ("a person can have more than one residence. . .").

Alternatively, Doray argues that in Maine, "reside" has a meaning similar to domicile. She argues that under this definition of "reside," the Property is where she "resides" even if she was mostly elsewhere in the years preceding the fire because she

6

always intended to return. In support of her argument, Ms. Doray relies on *Belanger v. Belanger*, 240 A.2d 745, 746 (Me. 1968). In that case, the court found that "reside" means "is domiciled, that is, having an abode *animo manendi*, a place where a person lives or has his home, to which, when absent, he intends to return and from which he has no present purpose to depart." *Id.*

Courts do not agree on whether "reside" is ambiguous in the insurance contract context. *Compare Nelson v. Safeco Ins. Co. of N. Am.*, 396 F. Supp. 2d 1274, 1282 (D. Utah 2005) (finding the language "where you reside" in an insurance contract ambiguous), and *Ex Parte American National. Property & Casualty Company*, 742 So. 2d 1212, 1214 (Ala. 1999) ("as a matter of law the term. . ."reside" or 'residing' was an ambiguous, elastic or relative term."), *with Shepard*, 743 F. Supp. at 430-32 (finding no ambiguity in the term reside).

The relevant Maine law, however, points toward ambiguity. *Cambridge Mut. Fire Ins. Co. v. Vallee*, 687 A.2d 956, 957 (Me. 1996) ("to "reside" and its corresponding noun 'residence' are 'chameleon-like' expressions.") (quoting *Huffman v. Huffman*, 441 N.W.2d 899, 904 (Neb. 1989)).[3]

Moreover, in the context of the Policy, the term "reside" could reasonably be interpreted to have more than one meaning and should therefore be considered ambiguous. *Vallee*, 687 A.2d at 957. Specifically, the definitions of "reside" and "residence premises" are ambiguous because they are silent on a pivotal issue in this case—whether they are exclusive or not, i.e. whether the insured can have more than one "residence premises" at a time. They also are silent on how much of a given period the insured must actually be on premises.

---

[3] Phenix claims that *Ivanov* and *Wheeler* hold that "reside" is unambiguous. These cases only support the proposition that 'residence premises' is unambiguous, not that "reside" is unambiguous.

The following scenarios illustrate how elusive is the concept of "reside" and therefore "residence premises":

- In the common situation of a person spending half the year in Maine and half the year elsewhere, where does the person "reside"? If the person spends more than half the year in Maine in one calendar year and less than half the year in Maine the next year, has where the person is deemed to "reside" changed?

- In the situation of a person being deployed on active military duty, with leave limited to 30 days a year, does the person cease to "reside" at the insured dwelling?

- In the situation, closer to this case, of a person who is employed far from home for months or years at a time, does the person cease to reside at the place they consider home if they rent or buy a place close to their employment?

Under Maine law, ambiguities in an insurance policy must be construed in favor of the insured and coverage. *Jipson*, 2008 ME 57, ¶ 10, 942 A.2d 1213. That, in turn, means that the test is not a purely objective test as Phenix argues. The insured's subjective beliefs and intentions, in addition to the objective evidence, help define where the person resides. The view that where a person is deemed to "reside" is determined, not only by objective evidence but also the person's subjective state of mind, is well stated by the Kanas Supreme Court in *Schoof v. Schoof*, 396 P.3d 329, 331-32 (Kan. 1964). In that case, the Kansas Supreme Court wrote "[t]he establishment of residence requires the concurrence of two factors: one physical, the other intellectual. . . [a] residence once established is presumed to continue until the same has been abandoned." *Id.* (citations omitted).

8

The undisputed facts demonstrate that Ms. Doray's position has both objective and subjective support. The objective support for her position includes that she left a the number of possessions at the Property, including clothing, a bed, jewelry, furniture, a hairbrush, a toothbrush, Christmas tree ornaments, family photographs, keepsakes, and other personal possessions. The fact that the possessions of particular sentimental value—the photographs and keepsakes—never left the Property is especially indicative of where Ms. Doray considered her home to be.

It is also undisputed that Ms. Doray maintained numerous connections with the property while she worked at Vermont Yankee—she paid bills, performed maintenance on the house, made frequent trips home to the Property whenever she had the opportunity to do so. The subjective support is that she always considered the Property as her "home base," that the places she stayed while working out of state—rented and owned—never displaced the Property as her residence premises.

While Phenix does not dispute that Ms. Doray characterized the Property as a home to which she would return to after her stint at Vermont Yankee was finished, it does question whether she intended that the Property remain her residence during the time preceding the fire when she worked in New Hampshire and Vermont. Phenix points out that she purchased land in New Hampshire, obtained a driver's license in that state, and received mail there. These factors may be indicative, but are not dispositive, of residency. *See Stephanie Hart & Mainers v. Gwadosky,* 1998 Me. Super. Lexis 130 * 16 n. 4 (May 15, 1998) ("Driver's licenses are not determinative of residency. . . the place one receives mail is not always indicative of residency.").

Moreover, Phenix's argument fails to address the fact that nothing in the policy language precluded Ms. Doray from maintaining two (or more) "residence premises."

The entire premise of Phenix's position is that an insured can have only one "residence premises" at a time. There is nothing in the policy definition itself that supports that interpretation. Phenix's position ignores the reality of such common scenarios as military deployments; out-of-state work; snowbird sojourns away from home, and other situations in which someone is staying elsewhere for extended periods of time but would not be deemed to have changed residence.

Given that the Property was indisputably Ms. Doray's residence premises at one time, and given that nothing in the policy says that the insured cannot have more than one "residence premises," it may not matter whether, as Phenix claims, Ms. Doray established a residence in New Hampshire or Vermont, even if that residence might have been her primary residence at various times. That she arguably had a residence elsewhere at various times may not matter because she never truly moved out of the Property, and thus never relinquished the Property as a "residence premises" within the meaning of the policy.

Based on the foregoing, and pursuant to M.R. Civ. P. 79(a), the Clerk is directed to enter this Order on Motions for Summary Judgment on the Civil Docket by a notion incorporating it by reference, and the entry is

A. Plaintiff Phenix Mutual Fire Insurance Company's Motion For Partial Summary Judgment on the coverage issue is DENIED.

B. Defendant Sally Doray's Motion for Partial Summary Judgment is GRANTED as to the coverage issue.

The court will include a declaration of coverage in the final judgment, which will also grant judgment to the Defendant on the Complaint and on Count I of her

10

Counterclaim. Final judgment, however, must await resolution of Counts II and III of the Defendant's Counterclaim.

In Case Management Conference Scheduling Order No. 2 dated July 24, 2012, this case was scheduled for trial on any claims requiring a trial on December 12, 13 and 14, 2012. The court has held those dates open for this case only, and as a result of this Order, the court is confirming that trial on Counts II and III of the Defendant's counterclaim will commence on December 12, 2012. The clerk will schedule a conference of counsel to discuss pretrial and trial related matters.

Pursuant to M.R. Civ. P. 79(a), the clerk is hereby directed to incorporate this Order by reference in the docket.

Dated: November 8, 2012

A. M. Horton
Justice, Superior Court

Entered on the Docket: 11/9/12
Copies sent via Mail __ Electronically ✓

11

**BCD-CV-11-33**
**Phenix Mutual Fire Insurance Company**     v.     **Sally Doray**

William Robitzek, Esq.
Berman & Simmons
129 Lisbon Street
P.O. Box 961
Lewiston, ME

Lance E. Walker, Esq.
Norman Hanson & Detroy
415 Congress Street
P.O. Box 4600
Portland, ME