21   357
98   495

INHABITANTS OF WAYNE *versus* INHABITANTS OF GREENE.

Domicil depends on residence and intention; both are necessary to constitute it; and where it is once fixed, it is to continue until a determination to reside elsewhere has been carried into effect.

And in determining the intention of an individual, when he may move from one place to another, the character of his home, his mode of life, his habits, and his disposition, may appropriately be taken into consideration.

To acquire a settlement by residence in a particular town, the person must actually have resided there continuously for the space of five years, intending to make that his home and place of residence. Occasional absences, however, from there, for short periods, during the time, without any intention of taking up his abode elsewhere, or of abandoning his residence there, would not interrupt the running of the five years necessary to gain a settlement. But if during any part of the five years, he had determined to abandon his residence, and had actually carried his determination into effect, for ever so short a period, it would prevent his gaining a settlement.

THIS was an action of assumpsit for supplies furnished the wife and children of John Butler, whose settlement was originally in Leeds, and who was born in Leeds, September 2, 1800. No question was made as to notice or reply, or the furnishing of the supplies as charged.

The plaintiffs introduced testimony tending to show that John Butler was residing and having his home in Greene on the 21st of March, 1821, and the defendants also introduced testimony tending to show that he did not so reside in Greene, but in Turner, at that time, and the plaintiffs also contended that said Butler was emancipated before said twenty-first day of March. But the jury did not agree in relation to said residence nor said emancipation, but found there was a continued residence of five years, commencing in February or March, 1830, and terminating in March, 1835. John Butler was married in February, 1837, in Wayne. Jonathan Moore, a

witness for the defendants, testified that said Butler worked for him in Turner in 1825, 1826, and about a fortnight in February, 1830, and made his home with him during those periods.

Benjamin P. Rackley, a witness for the defendants, testified that said Butler came to his father, Benjamin Rackley's house in Greene, to work the last of February or the first of March, 1830, that he remained there the larger part of 1830, going away frequently, and staying a week or fortnight at a time ; that he remained in that manner till the last of May or first of June, 1831, when he became offended and went away and took a final leave of them, took all the clothes he had with him, say, a spare shirt and perhaps a spare pair of trowsers, and declared he should not work there any longer, and that he should commence a suit unless he.was paid what he said was due to him that day. That he went to Jairus Phillips', Jr. in Turner, where he, Rackley, saw him, and where he had previously resided ; that on the first of July afterwards said John returned to the witness' father's, and wanted to work, and remained there until December, 1831, when he went to William Mooers' in said Greene.

Benjamin Rackley, a witness for the defendants, testified, that said John left his house the last days of May, 1831, and went to Turner, and said when he went away he should not come back again.

Roderic Dillingham, a witness for the defendants, testified that the last of May or first of June, 1831, he saw said Butler in Turner driving a team belonging to Jarius Phillips, Jr of said Turner ; that said Butler went to Gilman's mills in said Turner, and got a load of boards, and he saw said Butler going back to said Phillips' with said boards ; that he had known him since he grew up ; that he was in the habit of going back and forth, and had no home except where he dropped in. There was evidence that said Butler resided in Greene, after he resided at said Rackley's, at said Mooer's and at John Quimbys, until December, 1835. That wherever he worked he was in the habit of becoming displeased and leaving his

work, sometimes for a week or more, and then of returning to it again.

The defendants offered to prove by said Dillingham, that when he saw said Butler in said Turner, in May or June, 1831, said Butler offered to hire with him, which was rejected by the Court.

The said Butler was a witness for the plaintiffs. He testified as to his residence in various years in Greene. Said he resided at said Rackley's two years, and at said Mooers' most four years, and also at said Quimby's, and without being absent from either place except for a few weeks at a time.

WHITMAN C. J. presiding at the trial, instructed the jury, that the five years residence necessary to gain a settlement, must be continued residence, and without any intention of making it temporary merely. That in determining whether Butler was a mere temporary resident or not they must look to all the circumstances proved, having reference thereto, and particularly to the evidence tending to show that he had from boyhood, lived in Greene the greater part of his time. That if from the evidence of his early associations and habits of resorting to Greene, whenever he had done working out elsewhere for short periods, they should become satisfied, that he had intended to make Greene his place of residence and with such intentions that he had actually resided there continuously for the space of five years, he might be considered as having acquired a settlement there. That in such cases casual and fitful absences from there, for short periods, in the course of the five years, without any intention of taking up his abode elsewhere, or of abandoning his residence there, would not interrupt the running of the five years necessary to gain a settlement. But if during any part of the five years, he had determined to abandon his residence, and had actually carried his determination into effect, for ever so short a period, it would prevent his gaining a settlement. If however they should be satisfied that he did quit Rackley's in the manner he, Rackley, has stated, they would consider his habits and disposition as proved, and judge whether he meant seriously to abandon his residence and take

up his abode elsewhere. If not, and his going to Turner, as stated by Dillingham and the Rackley's, was the effect of his habits and temperament, and merely casual and without any serious intention of abandoning his residence in Greene, it should not interrupt the running of said five years.

The jury returned their verdict for the plaintiffs.

To which rulings, instructions and refusal to receive evidence, the defendants excepted.

*Wells*, for the defendants, said it was important to take into consideration the fact, admitted by all the witnesses, that Butler, the pauper, had no particular place of abode, which he could call his own ; that his home was, in the language of a witness, wherever " he happened to drop in." There was no place in Greene, which he could, with the least propriety, call his home. That town was no more his home, than any other town in the State, where he happened to be. It was wrong, therefore, to assume that to be his home, when he left there, without an intention of returning, as the instruction does. It should have been, that if he went from Greene, with the design of going to Turner, and without any intention of returning to Greene, that his home ceased to be in the latter town.

If Butler had no intention to return to Greene ; when he left there, his home ceased to be in that town. The fact of his leaving the town was clearly proved. The only farther inquiry was, did he then intend to return there ? To show his intention, his declarations on the subject were clearly admissible. It was competent, also, to prove that when he was in Turner, he wished to make that his place of abode, and all the home he had. It was proving an act accompanied with a declaration. But even without any act, such declarations of intention, or proof of facts showing an intention, are clearly admissible. Dillingham's testimony was improperly rejected. *Gorham* v. *Canton*, 5 Greenl. 266 ; *Baring* v. *Calais*, 2 Fairf. 463 ; *Thomaston* v. *St. George*, 17 Maine R. 117 ; *Cambridge* v. *Lexington*, 2 Pick. 536 ; 1 Stark. Ev. 47 ; 2 Stark. Ev. 146 ; *Haynes* v. *Rutter*, 24 Pick. 242 ; *Thorndike* v. *Boston*, 1 Metc. 242.

*Emmons* and *May*, for the plaintiffs, contended that the rejection of the testimony, and the instructions to the jury, were right.

Working at service in a particular town is no evidence, that he intended to make that his home. Dillingham's testimony was irrelevant and immaterial, and was therefore properly excluded. *Knox* v. *Waldoborough*, 3 Greenl. 455; *Parsonsfield* v. *Kennebunkport*, 4 Greenl. 47. The instructions were in accordance with former decisions of this Court. *Thomaston* v. *St. George*, 17 Maine R. 117; *Parsonsfield* v. *Perkins*, 2 Greenl. 411; *Boothbay* v. *Wiscassett*, 3 Greenl. 354.

The opinion of the Court was afterwards drawn up by

TENNEY J. — This action is brought to recover remuneration for expenses incurred in the support of the wife and children of one Butler, who is alleged to have his settlement in Greene.

The verdict was for the plaintiffs, on the ground, that Butler had acquired a settlement in Greene by a continued residence therein for five years, commencing in February or March, 1830, and ending March, 1835. Evidence was adduced by the defendants tending to show an interruption of this supposed continued residence from the last of May or first of June to the first of July, 1831, and evidence of a counter character, particularly from the pauper himself, was introduced by the plaintiffs. It was not in controversy, that the pauper was absent from Greene at the time referred to, but whether with an intention of abandoning that town as his home, was the point in issue.

Domicil depends on residence and intention. Both are necessary to constitute it; and when it is once fixed, it is to continue, until a serious and deliberate determination to reside elsewhere, is actually carried into effect. Absences of longer or shorter duration from one's usual home, often occur, and the domicil remains unchanged.

Residence and change of place are facts which are obvious, and cannot be mistaken; but in fixing a domicil, they are un-

important, unless accompanied by the intention of remaining, or of removing not to return, which are more uncertain, and often to be found in a variety of circumstances having a nearer or more remote bearing upon the question.

An individual under excitement, and the dominion of angry feelings may express a full determination to leave his residence and the town in which it is situated, and a temporary absence may thereupon follow, and still his domicil may not be changed thereby. Those knowing his temper and habits may be thoroughly satisfied, that his intention was not such as he declared. Early attachments to a place of residence, connexions of blood or affinity, ties growing out of the acquaintances formed in youth, often bind one to a particular spot, and induce him there to pass his moments of leisure, especially when he has no family located in another place. And these are circumstances material in determining the intention of the individual thus influenced, when he may move from one place to another. The character of his home, his mode of life, his habits and his disposition, may be important aids in coming to a result on the question of intention. The removal accompanied with the declaration of a resolution to abandon his residence, of a person possessing known decision of character, firmness of purpose, not subject to sudden excitement, generally believed to carry into effect his expressed intentions, would and ought to make an impression on the mind different from similar declarations and acts of one of an opposite character. We think the instructions to the jury were correct.

It is insisted that the testimony of Dillingham, of the offer of the pauper to hire with him in May or June, 1831, in Turner, was improperly excluded. It is settled, that when one is doing a certain act, declarations of his motives and intentions at the time are admissible. It is part of the res gestae. At the time the individual is actually leaving the place where he has resided, when he cannot foresee the consequences of a declaration of his intention, and there is no apparent inducement to speak falsely, such declarations are a part of his acts, and are important evidence. But when he is doing no act,

Wayne *v.* Greene.

in itself indicative of a change of place, for one purpose or another, we are not aware that the verbal expression of his intention can be received. The cases show that such testimony is proper only as accompanying the act, which act is material to the issue, and without the act it is not evidence.

We are unable to see how this evidence could have aided the jury, if allowed to be laid before them. It seems to us irrelevant. The Court are to judge of the relevancy, and the jury of the effect of evidence. A person may be absent weeks, months and years and his domicil remain unaffected, and no tie which binds him to his home in the least degree weakened. That this pauper was absent between May and July, 1831, was not disputed; but the question was, as to the intention which he entertained in his absence, on the subject of leaving his former home; and his offer to hire in Turner we think would not tend to settle that question.

Neither do we see that the testimony offered and rejected conflicts at all with the statement made by the pauper. From the report of the evidence he said nothing of that offer, and on that ground the ruling is not subject to objection.

*Judgment on the verdict.*