**Theodore POIRIER, Sr.,**

v.

**CITY OF SACO et al.**

Supreme Judicial Court of Maine.

Argued June 8, 1987.

Decided July 31, 1987.

Richard E. Valentino (orally), Saco, for plaintiff.

Erland B. Hardy (orally), James F. Molleur, Woodman & Edmands, Biddeford, for defendants.

Before McKUSICK, C.J., NICHOLS, GLASSMAN, SCOLNIK and CLIFFORD, JJ., and WERNICK, A.R.J.

McKUSICK, Chief Justice.

On November 5, 1985, Theodore Poirier, running unopposed, was elected to the Ward 3 seat on the Saco city council. The Saco city charter requires a city councilor to be both a "resident" and a "qualified voter" of the ward from which he is elected. In its role as the judge of the election and qualification of city councilors and other city officers under the Saco city charter, the city council after a public hearing determined that Poirier had not met those requirements and refused to certify Poirier's election. Poirier brought the present action in Superior Court (York County) seeking an order to require the city council to certify his election. After an independent review of the facts, the Superior Court also found that Poirier had failed to meet the legal requirements for the Ward 3 seat. We agree.

By Article II, section 2.03 of the Saco city charter, city councilors must be and remain both "residents and qualified voters of the ward from which they are elected." By the Saco city charter, voter qualification

is governed by state statute.[1] Poirier fails to meet the specific statutory requirements for voter qualification in Ward 3 and therefore is ineligible for that ward's council seat.

To be a qualified voter of a ward, a person by statute must meet several "general qualifications," one of which is residence in that ward. 21–A M.R.S.A. §§ 111, 115(2) (Supp.1986). "Residence for voting purposes" is specifically defined in 21–A M.R.S.A. § 112 (Supp.1986). Section 112(1) defines residence as "that place in which [a person's] habitation is fixed, and to which, whenever he is absent, he has the intention to return." Section 112(2) provides further that "[a] change of residence is made only by the act of removal, joined with the intent to remain in another place. A person can have only one residence at any given time." The Superior Court correctly determined that section 112 equates "residence for voting purposes" to domicile.[2] The statutory definition of that term has even a striking similarity in language to our judicial definition of domicile. We have defined domicile as "a place where a person lives or has his home, to which, when absent, he intends to return and from which he has no present purpose to depart." *Belanger v. Belanger*, 240 A.2d 743, 746 (Me. 1968). In *Margani v. Sanders*, 453 A.2d 501, 503 (Me.1982), we stated that "a person can have ... only one domicile."

On the factual record made before it, the Superior Court concluded that Poirier was domiciled in Ward 2 and that he had "not yet removed himself to Ward 3" within the meaning of section 112(2). Poirier lived in Ward 3 on Cumberland Avenue from 1947 until 1972 and at all relevant times has owned a house at 52 Cumberland Avenue. However, Poirier moved from Ward 3 upon his divorce in 1972, leaving his former wife to occupy 52 Cumberland Avenue. Poirier lived briefly at a motel in Ward 2, then lived in Old Orchard Beach for five or six years. Beginning in 1979 or 1980 Poirier lived in a rough cabin he had built on property in Ward 2 on which he had established a sawmill and lumber company. Poirier constructed a pond in front of the cabin and installed a small dock for fishing. He also built another cabin nearby for his son who works with him in the lumber business. Poirier was registered to vote in Ward 2 from 1974 or 1975 until he decided to run for the Ward 3 councilor office in 1985. Although Poirier began to renovate the house at 52 Cumberland Avenue in 1980 (when his former wife moved out) and although he occasionally spent nights there, in the summers from 1982 to 1985 in order to take advantage of an air conditioner, he was still living in the cabin in Ward 2 at the time of the Superior Court hearing in January 1986.

At the time in December 1985 when he was to take office, Poirier very clearly intended to return to 52 Cumberland Avenue when the renovations on that house were completed on the anticipated schedule in the fall of 1986. In fact, Poirier testified that he changed his voting address to Ward 3 and did not run as a candidate for the Ward 2 seat because he did not want to find himself *in the fall of 1986* representing a ward from which he had moved. However, that intent to move to 52 Cumberland Avenue in the future did not establish Ward 3 as "that place in which his habitation is fixed, and to which, whenever he is absent, he has the intention to return." 21–A M.R.S.A. § 112(1). *See Restatement (Second) of Conflict of Laws* § 19 comment a, illustration 3 (1971) ("*A*, having a domicil in State *X*, decides to

---

1. Article VII, section 7.01(b), of the Saco city charter provides that: "All citizens qualified by the Constitution and the laws of the State of Maine to vote in the City ... shall be qualified voters of the City within the meaning of the Charter."

2. Residence may for other purposes be distinguished from domicile:

Because "domicile" and "residence" are usually in the same place, they are frequently used as if they had the same meaning. "Domicile," however, means living in a locality with intent to make it a fixed and permanent home, while "residence" simply requires bodily presence as an inhabitant in a given place. *Fuller v. Hofferbert*, 204 F.2d 592, 597 (6th Cir. 1953); *see Margani v. Sanders*, 453 A.2d 501, 503 (Me.1982).

make his home in State *Y*. *A* has not yet gone to *Y*. *A*'s domicil is in *X*").

The burden of proof of change of domicile rests with the person asserting the change. *Margani v. Sanders,* 453 A.2d at 503; *Restatement (Second) of Conflict of Laws* § 19 comment c. Poirier made no showing whatsoever that he had made "the act of removal" from Ward 2 that section 112(2) requires for a change of voting residence to Ward 3.

On this record the Superior Court was fully justified in concluding that Poirier failed to meet the requirement that he be a "qualified voter" in Ward 3 as that term is defined in section 112 of the controlling state statute. Thus we must affirm the ruling that he may not serve as a city councilor for the ward from which he was elected. We do not have to go further and consider whether Poirier satisfied the additional requirement imposed by the Saco city charter that he also be a "resident" of Ward 3. Even if that additional requirement imposed a less stringent test than domicile, the city council's determination that he was ineligible to represent Ward 3 must stand.

The entry is:

Judgment affirmed.

All concurring.