2006 ME 90

**STATE of Maine**

v.

**Michael FALCONE**

and

**State of Maine**

v.

**James Jannetti.**

Supreme Judicial Court of Maine.

Argued: Jan. 25, 2006.
Decided: July 27, 2006.

G. Steven Rowe, Atty. Gen., William Baghdoyan, Asst. Atty. Gen. (orally), Augusta, for the State.

Thimi Mina (orally), McCloskey, Mina & Cunniff, L.L.C., Portland, for the Defendants.

Jonathan A. Block, Pierce Atwood, Portland, for Amicus Curiae.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

Majority: CLIFFORD, ALEXANDER, CALKINS, and LEVY, JJ.

Dissent: SAUFLEY, C.J., and DANA, and SILVER, JJ.

Dissent: DANA, J.

ALEXANDER, J.

[¶ 1] The State appeals from a judgment entered in the Superior Court (Cumberland County, *Cole, J.*) dismissing indictments against Michael Falcone and James Jannetti after determining that 36 M.R.S. § 5102(5)(A) (2005)[1] is unconstitutionally vague. Falcone and Jannetti were indicted on charges of evasion of income tax and failure to make and file Maine income tax returns. The State argues that the court erred in finding that the statute was unconstitutionally vague. We agree and vacate the judgment.

## I. CASE HISTORY

[¶ 2] Falcone and Jannetti are merchant mariners who graduated from the Maine Maritime Academy. Both defendants were indicted on six counts of evasion of income tax (Class C), 36 M.R.S. § 184–A (2005), and six counts of failure to make and file Maine income tax returns (Class

D), 36 M.R.S. § 5332 (2005), for the tax years 1997 to 2002.

[¶ 3] After indictment, the defendants filed a number of motions, including a motion to dismiss pursuant to M.R.Crim. P. 12(b)(1), arguing that section 5102(5)(A) is unconstitutionally vague. The cases were consolidated for hearing on these motions.

[¶ 4] At the hearing, counsel for the defendants stated that the sole issue for the trial court was "whether the prosecutions based on the undefined term 'domicile' violate the due process clause and equal protection provisions of the United States and Maine Constitutions." The briefing and oral argument largely focused on whether the term "domiciled" was adequately defined. The court granted the defendants' motion to dismiss, finding that the term "domiciled" in section 5102(5)(A) "was not adequately defined in the Maine tax code," and that the term was unconstitutionally vague. This appeal followed.

## II. DISCUSSION

[¶ 5] Review of a facial challenge to a Maine statute based on its constitutionality is de novo. *State v. Burby*, 2003 ME 95, ¶ 4, 828 A.2d 796, 798. "A statute is presumed to be constitutional and the person challenging the constitutionality has the burden of establishing its infirmity." *Kenny v. Dep't of Human Servs.*, 1999 ME 158, ¶ 7, 740 A.2d 560, 563. We "consider the whole statutory scheme for which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved." *State v. White*, 2001 ME 65, ¶ 4, 769 A.2d 827, 828–29.

---

1. Title 36 M.R.S. § 5102(5)(A) was significantly rewritten by P.L. 2005, ch. 519, pt. G, § G–2, effective March 29, 2006, but applicable only to "tax years beginning on or after January 1, 2007."

**[¶ 6]** To find a statute unconstitutionally vague, we must find that the statute "fails to define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *State v. McLaughlin*, 2002 ME 55, ¶ 9, 794 A.2d 69, 72 (quotation marks omitted).

**[¶ 7]** Title 36 M.R.S. § 5102(5) (2005), in the definitions section of the income tax portion of the Maine Revised Statutes, states:

> **Resident individual.** "Resident individual" means an individual:
>
> A. Who is domiciled in Maine;
>
> B. Who is not domiciled in Maine, but maintains a permanent place of abode in this State and spends in the aggregate more than 183 days of the taxable year in this State, unless he is in the Armed Forces of the United States.[2]

**[¶ 8]** The vagueness issue involves the term "domiciled" in subparagraph (A). The parties agree that subparagraph (B) does not apply to this case.

**[¶ 9]** Although it may be a "somewhat elusive concept," the concise and consistent rule is: "Domicile has two components: residence and the intent to remain." *Margani v. Sanders*, 453 A.2d 501, 503 (Me.1982); *see also Poirier v. City of Saco*, 529 A.2d 329, 330 (Me.1987) ("We have defined domicile as 'a place where a person lives or has his home, to which, when absent, he intends to return and from which he has no present purpose to depart.' ") (quoting *Belanger v. Belanger*, 240 A.2d 743, 746 (Me.1968)). The term "domicile" has long been in use by this Court to identify significant legal

---

2. For tax years beginning on or after January 1, 2007, section 5102(5) has been amended by P.L. 2005, ch. 519, pt. G, § G–1 to read as follows:

> 5. **Resident individual** "Resident individual" means an individual:
>
> A. Who is domiciled in Maine, unless:
> (1) The individual does not maintain a permanent place of abode in this State, maintains a permanent place of abode elsewhere and spends in the aggregate not more than 30 days of the taxable year in this State; or
> (2) Within any period of 548 consecutive days, the individual:
> (a) Is present in a foreign country or countries for at least 450 days;
> (b) Is not present in this State for more than 90 days;
> (c) Does not maintain a permanent place of abode in this State at which a minor child of the individual or the individual's spouse is present for more than 90 days, unless the individual and the individual's spouse are legally separated; and
> (d) During the nonresident portion of the taxable year with which, or within which, such period of 548 consecutive days begins and the nonresident portion of the taxable year with which, or within which, such period ends, is present in this State for a number of days that does not exceed an amount that bears the same ratio to 90 as the number of days contained in such portion of the taxable year bears to 548; or
>
> B. Who is not domiciled in Maine, but maintains a permanent place of abode in this State and spends in the aggregate more than 183 days of the taxable year in this State, unless the individual is in the Armed Forces of the United States.
>
> The geographic location of a political organization or political candidate that receives one or more contributions from the individual is not in and of itself determinative on the question of whether the individual is domiciled in Maine. The geographic location of a professional advisor retained by an individual may not be used to determine whether or not an individual is domiciled in Maine. For purposes of this subsection, "professional advisor" includes, but is not limited to, a person that renders medical, financial, legal, accounting, insurance, fiduciary or investment services. Charitable contributions may not be used to determine whether or not an individual is domiciled in Maine.

rights and responsibilities. *See, e.g., Gilmartin v. Emery*, 131 Me. 236, 239–42, 160 A. 874 (1932); *Gilman v. Gilman*, 52 Me. 165, 172–77 (1863) ("Residence, being a visible fact, is not usually in doubt. The intention to remain is not so easily proved. Both must concur in order to establish a domicile."); *Inhabitants of Exeter v. Inhabitants of Brighton*, 15 Me. 58, 60–61 (1838).

■■ [¶ 10] Domicile is used in other areas of the law and in many titles in the Maine Revised Statutes, and has been consistently defined and applied. *See, e.g., Margani*, 453 A.2d at 503–04.[3] Where the meaning of a term can be adequately determined by examining the plain language definition or the common law definition, a challenge under the sufficient definiteness prong of a due process/vagueness claim will fail. *See State v. Flint H.*, 544 A.2d 739, 742 (Me.1988). Although we might conceive of circumstances under which the common law definition's lack of specificity may render it unconstitutional as applied, that possibility does not justify the invalidation of the statute as unconstitutional on its face. *See Rust v. Sullivan*, 500 U.S. 173, 183, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991) (stating that "[t]he fact that [the law] might operate unconstitutionally under some conceivable circumstances is insufficient to render [it] wholly invalid").

[¶ 11] Read in the context of the tax code and two centuries of usage, the term "domiciled" is not unconstitutionally vague.[4]

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with this opinion.

SILVER, J., with whom, SAUFLEY, C.J., and DANA, J., join, dissenting.

[¶ 12] I respectfully dissent from the majority's determination that the term "domicile," 36 M.R.S. § 5102(5)(A) (2005), is not unconstitutionally vague when it is read within the context of the tax code and when considering its nearly two centuries of use in our jurisprudence. Because I believe that the term "domicile" is inadequately defined, leaving people "of common intelligence [to] necessarily guess at its meaning," *State v. Reed*, 345 A.2d 891, 894 (Me.1975) (quotation marks omitted), I would find that basing criminal sanctions on section 5102(5)(A) violates the defendants' right to due process of law in violation of the Fourteenth Amendment of the United States Constitution and article I, section 6–A of the Maine Constitution.

[¶ 13] It is an essential element of due process that crimes be defined with definiteness. *Knowlton v. State*, 257 A.2d 409, 409 (Me.1969). The bedrock principle underlying this truism "is that all are entitled to be informed as to what the state commands or forbids and no one should be required, at peril of life, liberty, or property, to speculate as to the meaning of penal statutes." *Id.* at 410 (quotation marks omitted). Accordingly, we have struck down on vagueness grounds a defendant's condition of probation that required him to "cooperate fully to the satisfaction of the probation officer" because the defendant, without knowledge of "the specific nature of the requisite cooperation," could not

---

**3.** Additionally, the concept of "domicile" usually entails a mixed question of fact and law. *Margani v. Sanders*, 453 A.2d 501, 504 (Me. 1982). In the present case, the facts regarding the defendants' alleged domicile have not been developed in the record.

**4.** We decline the defendants' invitation to affirm the Superior Court's judgment on other grounds, as the record has not been sufficiently developed.

know which behaviors would lead to the violation of the provision and thus to a "loss of his conditional liberty." *State v. Cote*, 539 A.2d 628, 628–29 (Me.1988); *see also State v. Aucoin*, 278 A.2d 395, 396 (Me.1971) (declaring a city ordinance prohibiting "loitering" to be unconstitutionally vague because use of the undefined prohibition "as a criterion of criminal conduct, provides an 'incomprehensible standard' ... to delimit a class of human behavior which shall be the subject of punishment"); *Reed*, 345 A.2d at 893–94.

[¶ 14] Here, the parameters of the defendants' required conduct are equally ill-defined. "Resident individuals" of Maine are required to file Maine income tax returns. 36 M.R.S. § 5220(1) (2005). A "resident individual" is defined as either an individual "[w]ho is domiciled in Maine," 36 M.R.S. § 5102(5)(A), or an individual "[w]ho is not domiciled in Maine, but maintains a permanent place of abode in this State and spends in the aggregate more than 183 days of the taxable year in this State," *id.* § 5102(5)(B) (2005). As the Court has pointed out, what it means to be "domiciled" in Maine is not defined in the tax code. *See State v. Greenleaf*, 2004 ME 149, ¶ 34, 863 A.2d 877, 885 ("All of the relevant terms [of 36 M.R.S. §§ 5102, 5220, 5330 (2005)] are adequately defined within the tax code, except for the term domicile."); Op. Me. Att'y Gen. 30–38 (Feb. 15, 1980) (recognizing that "Title 36 contains no definition of either domiciliary or domicile").

[¶ 15] Unlike the majority, I believe that domicile has not been sufficiently defined

by our jurisprudence to insulate it from constitutional infirmity. *See State v. Flint H.*, 544 A.2d 739, 742 (Me.1988) (holding that the numerous cases interpreting "aiding and abetting" helped to save it from unconstitutional vagueness). We *ostensibly* defined domicile in a 1982 paternity case. *See Margani v. Sanders*, 453 A.2d 501, 503 (Me.1982). At issue in *Margani* was the District Court's jurisdiction over the defendant, which required an examination of whether he was a "domiciliary of the State of Maine," triggering the court's personal jurisdiction over him. *Id.* Before setting forth the definition of domicile, we began an examination of the term by noting that domicile is a *"somewhat elusive concept* which is often confused with the related yet separate concept of 'residence.'" *Id.* (emphasis added). We then proceeded to "define" domicile, as the majority does today, as the confluence of two elements: "residence and intent to remain."[5] *Id.* Moreover, we noted that the "elusive concept" of domicile is "a mixed question of fact and law." *Id.* at 503, 504.

[¶ 16] Prior to *Margani*, we had discussed domicile, but again in the context of a court's civil jurisdiction over a defendant. *Belanger v. Belanger*, 240 A.2d 743, 746 (Me.1968). In *Belanger*, we noted:

The fact that domicil is so dependent upon intent, cases dependent upon domicil present peculiar difficulties. As in other cases in which intent is relevant, it is supported by statement of the person whose intent is in issue and proof of other facts from which intent may properly be inferred. The factual circum-

---

5. In *Margani v. Sanders*, we examined the factual findings supporting the trial court's determination that the defendant was a Maine domiciliary. 453 A.2d 501, 504 (Me.1982). We did not then have occasion, however, to note the weight to be given to the factors supporting the court's finding, i.e., whether one factor was more important than another or what combination of factors would actually support a finding of domicile. Moreover, we did not have occasion to examine whether the facts presented there would support a finding of domicile in a criminal case where the burden of proof is upon the State to prove every element of an offense beyond a reasonable doubt.

stances may speak louder than the words.

*Id.*; *see also Gilman v. Gilman,* 52 Me. 165, 174–77 (1863) (discussing the difficulties of defining domicile); *Plant v. Harrison,* 36 Misc. 649, 74 N.Y.S. 411, 414 (N.Y.Sup.Ct.1902) (stating that the facts of prior domicile cases are of "slight assistance" and definitions of domicile are "unsatisfactory"); RESTATEMENT (SECOND) OF CONFLICT OF LAWS: DOMICIL OF PERSON HAVING TWO DWELLING PLACES § 20 special note on evidence for establishment of a domicil of choice (1971) ("It may be difficult to predict a court's decision as to the location of the domicil when the person's contacts are more or less equally divided between two or more states."); *cf.* Lea Brilmayer, *Interstate Preemption: the Right to Travel, the Right to Life, and the Right to Die,* 91 MICH. L. REV. 873, 884 n. 45 (1993) ("The vagueness of the domicile test potentially submits the estate to multiple taxation.").

[¶ 17] Our previous cases discussing domicile add nothing to an understanding of this "elusive concept" other than merely repeating the general rule that the majority merely repeats today. Despite the unclear guidance from this very Court, as the Superior Court correctly noted, "taxpayers in 1997–2002 . . . were asked to make a legal determination that courts of law found elusive, intensely circumstantial, and fact-specific." The limited guidance provided by this Court as to what it means to be domiciled in Maine is not sufficiently definite to inform a person of ordinary intelligence what it means to be domiciled in this State, i.e., exactly what factors are important in making this determination and the relative weight to be given those factors.

[¶ 18] In an attempt to figure out what it means to be domiciled in Maine, a person of ordinary intelligence who did not work or live in Maine year-round would be forced, after finding no provision defining domicile in the Maine Revised Statutes, to consult the volumes of the Atlantic Reporter and, possibly, the old Maine Reporter, to try to locate cases discussing domicile. But that person of ordinary intelligence would face a large obstacle in that there are no tax or criminal cases that answer the question or are otherwise useful in helping him or her avoid criminal prosecution.[6] Then, that person of ordinary intelligence would be forced to visit a tax attorney or other professional to help him or her with this legal determination[7]—because after all, domicile is, in part, a legal determination. *See Margani,* 453 A.2d at 504. Nowhere in this process, however, does that person of ordinary intelligence become informed about what conduct the State prohibits. Given the current state of our law, any such answers are merely speculation and the penalty for guessing wrong is imprisonment.

[¶ 19] Maine is one of only a minority of states that does not provide guidance for taxpayers regarding domicile either statutorily or through duly promulgated regulations. Some states take the opposite approach and provide taxpayers with a list of factors used to determine domicile. It was in this context that the constitutionality of the Minnesota taxpayer domicile rule was upheld in the face of arguments that it was

---

6. As noted above, the few civil jurisdiction cases discussing the concept add little to an understanding of it.

7. This in particular is a burden we have never placed on a criminal defendant. Furthermore, in the absence of further guidance from the Legislature or this Court, such professional advice is merely a guess as to what factors the Maine Revenue Services or, more importantly, a court, would consider decisive in making a determination of domicile.

unconstitutionally vague. *State v. Enyeart*, 676 N.W.2d 311, 319 (Minn.Ct.App. 2004). Minnesota provides its taxpayers with a list of twenty-six factors that courts must consider when determining whether someone intended to make the state his or her domicile.[8] *Id.* at 319–20. The Minnesota Court of Appeals noted that "[a]lthough the domicile rule does not provide a magic formula for determining when a taxpayer has established an intention to change domicile—*relying instead on an exhaustive list of determinative factors—it specifies a standard of conduct that ordinary people of reasonable intelligence can understand.*" *Id.* at 321 (emphasis added).

[¶ 20] In addition to a clear lack of judicial guidance or statutory authority, the Maine Revenue Services, during the period of 1997–2002, had in place no rules or instructions which an individual could use to aid him or her in making a decision about whether he or she was a domiciliary of Maine and, accordingly, whether that

---

8.  Those factors include:
    A.  location of domicile for prior years;
    B.  where the person votes or is registered to vote, but casting an illegal vote does not establish domicile for income tax purposes;
    C.  status as a student;
    D.  classification of employment as temporary or permanent;
    E.  location of employment;
    F.  location of newly acquired living quarters whether owned or rented;
    G.  present status of the former living quarters, i.e., whether it was sold, offered for sale, rented, or available for rent to another;
    H.  whether homestead status has been requested and/or obtained for property tax purposes on newly purchased living quarters and whether the homestead status of the former living quarters has not been renewed;
    I.  ownership of other real property;
    J.  jurisdiction in which a valid driver's license was issued;
    K.  jurisdiction from which any professional licenses were issued;
    L.  location of the person's union membership;
    M.  jurisdiction from which any motor vehicle license was issued and the actual physical location of the vehicles;
    N.  whether resident or nonresident fishing or hunting licenses purchased;
    O.  whether an income tax return has been filed as a resident or nonresident;
    P.  whether the person has fulfilled the tax obligations required of a resident;
    Q.  location of any bank accounts, especially the location of the most active checking account;
    R.  location of other transactions with financial institutions;
    S.  location of the place of worship at which the person is a member;
    T.  location of business relationships and the place where business is transacted;
    U.  location of social, fraternal, or athletic organizations or clubs or in a lodge or country club, in which the person is a member;
    V.  address where mail is received;
    W.  percentage of time (not counting hours of employment) that the person is physically present in Minnesota and the percentage of time (not counting hours of employment) that the person is physically present in each jurisdiction other than Minnesota;
    X.  location of jurisdiction from which unemployment compensation benefits are received;
    Y.  location of schools at which the person or the person's spouse or children attend, and whether resident or nonresident tuition was charged; and
    Z.  statements made to an insurance company, concerning the person's residence, and on which the insurance is based.
    . . . .
    MINN. R. 8001.0300(3) (2006). *See also* CONN. AGENCIES REGS. § 12–701(a)(1)–1 (2006) (listing twenty-eight non-inclusive factors for an individual to use to determine Connecticut domiciliary status); IOWA ADMIN. CODE r. 701–38.17(422) (2006) (creating rebuttable presumption of domiciliary status if one of five elements is met and providing additional list of ten relevant facts); N.C. ADMIN. CODE tit. 17, r. 6B.3901 (2006) (listing sixteen relevant factors for determining domicile); OHIO ADMIN. CODE § 5703–7–16 (2006) (listing factors not to be and to be considered in making a domicile determination).

individual was required to file a Maine income tax return for income not otherwise apportioned to this State. Because there was no guidance for Maine taxpayers at the time of the conduct at issue in these cases, I believe that section 5102(5)(A) is unconstitutionally void for vagueness. The majority's mere restatement of a vague legal test, without more, is not the type of "reasonable construction" sufficient to save the statute. *See State v. Witham*, 2005 ME 79, ¶ 7, 876 A.2d 40, 42 (stating that "legislation should not be held invalid on the ground of uncertainty if susceptible of any reasonable construction that will support it") (quotation marks omitted); *State v. Eaton*, 577 A.2d 1162, 1165 (Me.1990). Such a construction leaves people of common intelligence to guess at the meaning of domicile and subject themselves to criminal sanctions if they guess wrong. Thus, I believe that the statute does not pass constitutional muster and I would affirm the dismissal of the indictments.

DANA, J., dissenting.

[¶ 21] Because this Court admits that domicile is a "somewhat elusive concept," *see Margani v. Sanders*, 453 A.2d 501, 503 (1982), yet by this decision authorizes the State to employ this murky concept to charge people with crimes, I respectfully dissent.

[¶ 22] Criminal statutes must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited ...." *State v. McLaughlin*, 2002 ME 55, ¶ 9, 794 A.2d 69, 72 (quotation marks omitted); *see also Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) ("[All persons] are entitled to be informed as to what the State commands or forbids.") (quoting *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888 (1939)). Yet to understand whether a person is required to file a tax return in Maine requires an "ordinary person" to conduct extensive legal research and analysis only to arrive at an uncertain answer.

[¶ 23] Although taxpayers are generally required to know the law and cannot claim ignorance of the law as a defense, the State, for its part, has an obligation to make the law relatively understandable. Unfortunately, Maine has chosen to "hide the ball" in order to collect more taxes than that to which it would be otherwise entitled.

[¶ 24] In order to discern whether a person is required to file an income tax return in Maine (and thus whether the person is subject to criminal prosecution for failing to do so), an "ordinary person" would need to do the following, in approximately this order: (1) find 36 M.R.S. § 5220 (2005) in the Maine Tax Code, which sets forth who must file a tax return; (2) read and understand that "resident individuals" are required to file Maine income tax returns; (3) divine that there is a definition for "resident individuals," even though section 5220 does not direct the taxpayer to any such definition; (4) find the definition of "resident individuals," located in a different chapter of the Code at 36 M.R.S. § 5102(5) (2005); (5) learn that "resident individual" means "an individual ... [w]ho is domiciled in Maine." 36 M.R.S. § 5102(5); (6) search the Code, in vain, for a definition for "domicile;" (7) discover that "domicile" is not defined in the Code; (8) search the Maine Revenue Services' rules for a definition; (9) discover that the rules also do not define "domicile"; (10) recognize the need to search the common law for a definition of "domicile"; (11) search the common law and find *Margani*, 453 A.2d at 503 to learn that domicile has two components: "residence" and the

"intent to remain";[9] (12) recognize intuitively that domicile in the Maine Tax Code has the same meaning as in the Maine long-arm statute, *see id.*; 14 M.R.S. § 704–A(2)(G) (2005); (13) search the cases to better understand the meaning of "intent to remain," starting with the scores of disputes between Maine towns over pauper settlements in the 1800s; (14) read these cases and develop a list of factors that this Court has used to assess a person's "intent to remain"; and (15) apply the factors to one's own situation and guess at what the State will conclude. If the "ordinary person" guesses wrong, the State of Maine may seek to deprive her of her liberty.

[¶ 25] As a byproduct of this last search, the "ordinary person" may become acquainted with the rules and presumptions regarding domicile the State will or may apply in her prosecution. "[A] person can have more than one residence but only one domicile." *Margani*, 453 A.2d at 503. Absent proof of change, one's original domicile continues, even if the person is absent from her home. *Id.* "[A] person does not change [her] domicile by simply moving from place to place." *Id.* at 503–04 (quotation marks omitted). The burden of showing a change of domicile is on the person asserting the change. *Id.* at 503. (Query whether the Court would apply this burden in a criminal prosecution?) But, the person should be aware that if there is conflicting evidence as to her intent to change domicile, the State will presume that her original domicile is her legal domicile. *Id.* (Same query?)

[¶ 26] At least twenty-five other states do not require such extensive legal research and analysis to understand what domicile means or how it will be determined for income tax purposes.[10] Rather, these states provide definitions for domicile in their tax regulations, many of which also outline the criteria used by each state to determine domicile. *See* ALA. ADMIN. CODE r. 810–3–2–.01 (2006); 006 05 CODE ARK. RULES AND REGS. r. 008 (1.26–51–102(9), 2.26–51–102(9)) (2006); CAL. CODE REGS. tit. 18, § 17014(c), (d) (2006); CONN. AGENCIES REGS. § 12–701(a)(1)–1 (2006); CODE HAW. RULES tit. 18, r. 18–235 (2006); IDAHO ADMIN. CODE 35.01.01.030 (2005); IND. ADMIN. CODE tit. 45, r. 3.1–1–22 (2006); IOWA ADMIN. CODE r. 701–38.17 (2006); KAN. ADMIN. REGS. § 92–12–4a (2006); MICH. ADMIN. CODE r. 206.5 (2006); MINN. R. 8001.0300 (2006); CODE MISS. RULES r. 48–030–001(Reg. 701) (2006); MONT. ADMIN. R. 42.2.304 (2005); NEB. ADMIN. CODE tit. 316, r. 22–001 (2006); N.M. ADMIN. CODE tit. 3, § 3.3.1.9 (2006); N.Y. COMP. CODES R. & REGS. tit. 20, § 105.20 (2006); N.C. ADMIN. CODE tit. 17, r. 6B.3901 (2006); OHIO ADMIN. CODE § 5703–7–16 (2006); OKLA. ADMIN. CODE § 710:50–3–36 (2005); OR. ADMIN. R.

---

9. Contrary to the majority's conclusion, we have not "consistently" defined the intent component of domicile as the "intent to remain." In addition to defining it as the "intent to remain," *Margani v. Sanders*, 453 A.2d 501, 503 (Me.1982), we have also defined it as: (1) "intent to return," *Poirier v. City of Saco*, 529 A.2d 329, 330 (Me.1987); *Belanger v. Belanger*, 240 A.2d 743, 746 (Me.1968); (2) "without any present intention of removing therefrom," *Gilman v. Gilman*, 52 Me. 165, 173 (Me.1863) (quotation marks and emphasis omitted); (3) intent "to make [residence] the real, true, fixed home," *Holyoke v. Holyoke*, 110 Me. 469, 488, 87 A. 40, 49 (1913);

(4) "intent to remain for an unlimited time," *Stockton v. Staples*, 66 Me. 197, 198 (1877); and (5) "intention to reside," *Gilman*, 52 Me. at 177 (emphasis omitted).

10. Although the author has not checked the statutes of all the other states, the following states do not have a state income tax: Alaska, Nevada, New Hampshire, South Dakota, Tennessee, Texas, Washington and Wyoming. Thus, at least thirty-three states do better by their citizens in this regard than do we in Maine.

150–316.027(1) (2006); 61 Pa. Code § 101.3 (2006); Utah Admin. Code R865–9I–2 (2006); Vt. Code R. 10–060–039 (2006);[11] 23 Va. Admin. Code § 10–110–30 (2006); W. Va. Code St. R. § 110–21–7 (2006).

[¶ 27] Not only does Maine provide no guidance, but the Maine Revenue Services, presumably to keep the populace guessing, recently resisted a legislative attempt to provide a definition of and criteria for assessing a change of domicile. In 2005, several members of the Legislature proposed "An Act to Clarify the Definition of 'Domiciled' for Maine Income Tax Purposes," L.D. 325, § 1 (122nd Legis. 2005), which directed the tax assessor to "adopt rules to clarify and define 'domiciled' ... in such a way that taxpayers ... can readily determine whether they are domiciled in Maine for income tax purposes." The Legislature referred the bill to the Taxation Committee. 1 Legis. Rec. S–99 (2005). During hearings before the Taxation Committee in 2005, the Maine Revenue Services sent a memo to the committee resisting the efforts to provide guidance to people, stating: "To provide a simple 'cookbook' method of determining domicile would require Maine to compromise its ability to tax a number of taxpayers and thus suffer the resulting revenue loss." *An Act to Clarify the Definition of "Domiciled" for Maine Income Tax Purposes: Hearing on L.D. 325 Before the Committee on Taxation,* 122nd Legis. (2005) (statement of Jerome D. Gerard, Acting Executive Director, Maine Revenue Services).[12]

[¶ 28] Because the State refuses to provide guidance for ordinary persons to determine where they are domiciled, I have, as the Court apparently expects ordinary persons to do, examined the cases and compiled a list of factors that we have relied upon in the past to evaluate a person's "intent to remain." In addition to the always helpful reference to "all circumstances," *see Waterborough v. Newfield,* 8 Me. 203, 205 (1832), we have specifically identified: (1) the person's property interests in real estate in Maine and other states, *see Levasseur v. Aaron,* 503 A.2d 1291, 1293 (Me.1986); (2) the amount of time the person spends in Maine versus other locations, *see id.,* 503 A.2d at 1293; *Poirier v. City of Saco,* 529 A.2d 329, 330 (Me.1987); (3) where the person is registered to vote, *see Levasseur,* 503 A.2d at

---

11. In its Code of Regulations, Vermont provides extensive guidance to persons by outlining (1) the definition of domicile; (2) the relevant factors for determining domicile; (3) the intent and actions necessary to change domicile; (4) the burden of proof; and (5) specific scenarios, such as married individuals, minor children, students, and military personnel. Vt. Code. R. 10–060–039 (2006).

12. Even though the committee heard testimony from the Maine Society of Certified Public Accountants as well as numerous individuals in support of L.D. 325, the Taxation Committee amended the bill, eliminating the language that directed the assessor to adopt rules to clarify and define domicile. Comm. Amend. A to L.D. 325, No. H–588 (122nd Legis. 2005). Instead, the Committee proposed an amended bill, which the House and Senate passed, which does not define domicile, but, rather, provides a handful of factors that the State *cannot* use to determine domicile. *Id.* (providing that charitable and political contributions made by an individual and the geographic location of an individual's professional advisors may not be taken into consideration in determining domicile). The House and Senate passed the amended bill, Comm. Amend. A to L.D. 325, No. H–588 (122nd Legis. 2005), but then tabled the bill to the Appropriations Committee, which passed essentially the same bill as part of the Governor's 2006–2007 Supplemental Budget, L.D. 1968 (122nd Legis. 2006). *See* 1 Legis. Rec. H–899 (2005); 1 Legis. Rec. H–1090–91 (2005); 1 Legis. Rec. S–1171 (2005); 1 Legis. Rec. S–1216 (2005); 1 Legis. Rec. S–1331 (2005). See footnote 2 of the Court's opinion for the text of the enacted legislation.

1293; *Poirier*, 529 A.2d at 330; *Belmont v. Vinalhaven*, 82 Me. 524, 527–28, 531 20 A. 89, 89–90 (1890); *Gilman v. Gilman*, 52 Me. 165, 176 (1863); (4) where the person registers her motor vehicles, *see Margani*, 453 A.2d at 504; *Belanger*, 240 A.2d at 745; (5) where the person is a licensed driver, *see Margani*, 453 A.2d at 504; (6) where, geographically, the person works, *see Belmont*, 82 Me. at 528–29, 20 A. at 90; *Gilman*, 52 Me. at 175–76; (7) the person's mailing address, *see Margani*, 453 A.2d at 504; (8) where the person's spouse lives, *see Greene v. Windham*, 13 Me. 225, 228 (1836) (providing that the residence of the wife is rebuttable evidence of the domicile of the husband) (Query whether the reverse is the case?); (9) the existence of any documents in which the person has acknowledged that she is a resident of a particular state, *see Margani*, 453 A.2d at 504; *Gilman*, 52 Me. at 176, (10) the person's declarations about his or her intention, *see Levasseur*, 503 A.2d at 1293; *Holyoke v. Holyoke*, 110 Me. 469, 477–80, 87 A. 40, 45–46 (1913); *Gorham v. Canton*, 5 Me. 266, 267 (1828); (11) the state from which the person receives public aid, if

any, *see Belanger*, 240 A.2d at 745, (12) the location of one's personal property, *see Holyoke*, 110 Me. at 489, 87 A. at 50, (13) the location of one's chauffeur, *see id.* at 490, 87 A. 40; (14) the person's "early attachments to a place of residence," *see Wayne v. Greene*, 21 Me. 357, 362 (1842); (15) the person's connections of blood or affinity, *see id.*; (16) "ties growing out of [a]cquaintances [the person] formed in youth," *see id.*; (17) the character of the person's home, *see id.*; (18) the person's mode of life, *see id.*; and (19) the person's habits and disposition, *see id.*

[¶ 29] Because the State is using the threat of criminal prosecution based on this "elusive concept" to keep people from "so arranging [their] affairs as to keep taxes as low as possible," [13] I would affirm the dismissal of the indictments.

13. "[T]here is nothing sinister in so arranging one's affairs as to keep taxes as low as possible. . . . [N]obody owes any public duty to pay more than the law demands: taxes are enforced exactions, not voluntary contributions." *Comm'r of Internal Revenue v. Newman*, 159 F.2d 848, 850–51 (2d Cir.1947) (Hand, J., dissenting).